KRISTOPHER DURBIN,                                                          Plaintiff,

v.

C&L TILING INC.,                                                          Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) a Motion to Compel Discovery Responses (DN 28) filed by Plaintiff, Kristopher Durbin ("Durbin"); (2) a Motion for Protective Order (DN 30) filed by Durbin and Durbin's wife, Mary Jacqueline Durbin ("M. Durbin"); (3) a Joint Motion to File Documents Under Seal (DN 46) filed by both Durbin and Defendant C&L Tiling Inc. d/b/a Timewell Drainage Products and Services ("Timewell"); (4) a Second Motion to Compel Discovery Responses (DN 64) filed by Durbin; and (5) a Motion to File Documents Under Seal (DN 72) filed by Timewell. District Judge Rebecca Grady Jennings referred these motions to the undersigned for disposition. (DNs 34, 50, 69, 79.)  All motions are fully-briefed and ripe for decision.

For the reasons set forth below, Durbin's Motions to Compel (DNs 28, 64) are **GRANTED IN PART** and **DENIED IN PART**, Durbin and M. Durbin's Motion for Protective Order (DN 30) is **GRANTED**, the Parties' Joint Motion to Seal (DN 46) is **GRANTED**, and Timewell's Motion to Seal (DN 72) is **GRANTED**.

## I.     BACKGROUND

On May 2, 2018, Durbin filed a complaint against his employer, Timewell, in Jefferson Circuit Court asserting wage and hour, breach of contract, and unjust enrichment claims alleging that Timewell had improperly withheld certain commissions from Durbin.  (DN 1-1, at PageID #

8-14.)  Timewell removed the matter to this Court.  (DN 1.)  Timewell then terminated Durbin on May 17, 2018 (DN 28-1, at PageID # 255-56), and Durbin amended his complaint to add claims of fraud by misrepresentation and wrongful termination, as well as a request for punitive damages (DN 11).

Regarding the withheld commissions, Durbin alleged that he worked for Timewell as an agricultural sales representative since 2010.  (DN 28-1, at PageID # 254.)  Durbin claimed that under the terms of a 2012 employment contract, he was to be paid "a commission percentage of his gross sales based on the gross margin level of the products he sold," which "ranged from 1.9% to 3.7% depending on the range of his total gross margin level."  (*Id.* at 254; DN 28-5.)  In 2014, Timewell requested Durbin sign a new employment contract that would have changed how his commission was paid.  (DN 28-1, at PageID # 254; DN 28-6.)  Instead of being paid commission immediately, Timewell would pay Durbin 70% of his earned commission and only pay out the remaining 30% if Timewell's "audited net ordinary income" exceeded a certain percentage as set forth in the contract.  (DN 28-1, at PageID # 254-55; DN 28-6.)  However, the 2014 contract did not define "audited net ordinary income."  (DN 28-1, at PageID #255 n.3; DN 28-6.)  Durbin refused to sign the 2014 contract but alleged that Timewell withheld 30% of his commissions anyway.  (DN 28-1, at PageID # 255.)  While Durbin claimed the 2014 contract is unenforceable, he argued in the alternative that even under the 2014 contract, Timewell's audited net ordinary income exceeded the threshold set forth in the contract such that he should have been paid his withheld commissions.  (*Id.*)

Regarding his termination, Durbin alleged that he was terminated for "poor performance" shortly after this case was filed.  (*Id.*)  Durbin claimed his "poor performance" was merely a pretext

and that at the time he was terminated, numerous other Timewell sales representatives were performing at a similar, or worse, level to him. (*Id.* at 255-56.)

Durbin propounded discovery to Timewell in September 2018. (*Id.*; DN 28-17, at PageID # 345.) Durbin claimed that Timewell's responses (DN 28-18) are unsatisfactory in several respects. (DN 28-1.) Durbin and Timewell exchanged numerous communications regarding this dispute, including letters and e-mails, and even had a four hour telephonic conference on the subject. (*Id.* at PageID # 257-58.) However, the Parties were unable to resolve their dispute without the Court's intervention, and Durbin filed two Motions to Compel related to Timewell's discovery responses. (DNs 28, 64.)

During a February 21, 2019 telephonic status conference with the Court, the Parties indicated there were additional exhibits they believed the Court should consider in ruling on Durbin's first Motion to Compel (DN 28). (DN 43.) On March 21, 2019, the Parties jointly-tendered additional exhibits for the Court's consideration (DNs 47, 48), some of which they sought leave to file under seal (DNs 46, 47). Timewell later filed another Motion to Seal (DN 72) to submit other documents purportedly pertinent to the Parties' dispute.

Durbin also served supplemental discovery requests on several issues. (DN 64-1, at PageID # 1375; DN 58-9.) Though Timewell initially agreed to produce certain documents in response, those documents were not produced prior to the filing of Timewell's now pending Motion for Partial Summary Judgment (DN 54) and Motion for Partial Judgment on the Pleadings (DN 55). After a conference call with the Court (DN 63), Durbin filed an additional Motion to Compel (DN 64) related to those supplemental requests.

Additionally, Timewell sought to subpoena certain information regarding M. Durbin from her current and former employers, Jefferson County Public Schools ("JCPS") and the Summit

School.  (DN 30.)  M. Durbin and Durbin filed a Motion for Protective Order asking the Court to limit discovery regarding M. Durbin's employment to only discovery obtained from the Durbins directly. (*Id.*)  The Durbins also requested that the Court quash Timewell's subpoenas to JCPS and the Summit School.  (*Id.*)

The pending discovery motions (DNs 28, 30, 64) and motions to seal (DNs 46, 72) are now ripe for the Court's consideration.

## II.    DISCUSSION

### A.    Durbin's Motions to Compel (DNs 28, 64)

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  The scope of discovery is not without limits, however.  In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33"

or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). When an objection to relevance is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). If that party demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate why the information or documents are not discoverable under the Federal Rules. *Id.*

Durbin requested that the Court compel Timewell to provide "full and complete" responses" to Durbin's Interrogatory Nos. 5, 6, and 15 and Request for Production Nos. 3-7, 9, 11, 15, 18(c)-(e), 20, 24, and 25. (DNs 28, 64.) Durbin initially also requested that the Court compel Timewell to provide a "full and complete" response to Interrogatory No. 6 but later indicated that a supplemental document production resolved that issue. (DN 31.) Therefore, Durbin's Motion (DN 28) is **DENIED AS MOOT** as to Interrogatory No. 6. The Court will address the remaining discovery requests below.

### 1. Request for Production Nos. 3-7, 9, and 11

In Request for Production Nos. 3-7, 9, and 11, Durbin sought federal income tax returns (Request No. 3); interim financial statements, including balance sheets and income statements (Request No. 4); fixed asset depreciation schedules (Request No. 5); detailed general ledgers (Request No. 6); adjusting journal entries (Request No. 7); information regarding salaries and commissions paid to employees (Request No. 9); and accounting manuals/documents to describe accounting policies and procedures (Request No. 11) of Timewell and Timewell's subsidiaries. (DN 28-17, at PageID # 337-39.) Timewell asserted multiple, identical objections to these Requests as follows:

**OBJECTION:** Defendant objects to this Request to the extent it seeks the release of confidential or proprietary information, the release of which would be injurious to Defendant and/or third parties in the absence of an adequate confidentiality agreement or protective order. Documents responsive to this request are being withheld on the basis of this objection.

**OBJECTION:** Defendant objects to this Request on the grounds that it seeks information that would be unduly burdensome to obtain and not proportional to the needs of the case. Documents responsive to this request are being withheld on the basis of this objection.

**OBJECTION:** Defendant objects to this Request on the grounds that the interrogatory [*sic*] does not seek information that is relevant to claims or defenses asserted in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence. Documents responsive to this request are being withheld on the basis of this objection.

(DN 28-18, at PageID # 369-78.) Timewell also objected that certain terms contained within the Requests were "vague, ambiguous, imprecise" or "subject to multiple interpretations that are not properly defined or explained." (*Id.*) Timewell only provided a response to Request No. 11, but the response simply stated that it would produce responsive documents after entry of a confidentiality agreement or protective order "sufficient to protect Defendant's interest." (*Id.* at 378.) Consistent with these objections, Timewell did not initially produce any responsive documents. (DN 28-1, at PageID # 257.) However, Timewell subsequently produced financial statements for 2014, 2015, 2016, and 2017; some journal entries and detailed general ledgers from 2016-2017; the relevant income goals for 2014-2017; and the reports of its external auditors for the same period. (DN 28-17, at PageID # 259; DN 31, at PageID # 475, 478; DN 35, at PageID # 531, 531 n.1; DN 40, at PageID # 654.)

Durbin maintained that Timewell's production is insufficient to enable him to assess its true audited net ordinary income in order to substantiate his claim that Timewell actually met its income goals under the 2014 contract and, as a result, wrongfully withheld his commissions. (DN 28-1, at PageID # 259-60.) He asserted that he has retained an expert to calculate Timewell's net ordinary income and that his expert needs the financial documents requested in Request for

Production Nos. 3-7, 9, and 11 to make that determination. (*Id.* at 260; DN 28-19; DN 28-20.) He attached a letter from his expert explaining the need for each particular category of documents requested. (DN 28-20.) Durbin also argued as to each Request that Timewell's objections were general and failed to specifically state the grounds for its objection in violation of Fed. R. Civ. P. 34(b)(2).[1] (DN 28-1, at PageID # 260-65.)

In response, Timewell maintained that Durbin was on a fishing expedition into its sensitive financial documents and had neither made allegations nor provided evidence that the income numbers provided by Timewell were inaccurate. (DN 35, at PageID # 537.) Timewell relied on *McArthur v. Rock Woodfired Pizza & Spirits*, in support of its argument that Durbin's requests were not proportional to the needs of the case. In *McArthur*, the United States District Court for the Western District of Washington granted a protective order as to a number of requests for production and 30(b)(6) deposition topics that the court found were not proportional to the needs of the case. *McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, 139-141 (W.D. Wash. 2016). The court held that plaintiff's requests for stock ledgers, stock certificates, shareholder agreements, balance sheets, profit and loss statements, cash flow statements, tax reports, and bank statements, among other documents requested, were not proportional to the needs of the case given that plaintiff alleged that "she was not provided adequate space or breaks for breast pumping after she had a baby, and that she was forced to work off the clock in order for her manager to keep

---

[1] Durbin's twenty-one page Memorandum in Support of his Motion to Compel included nearly nine full pages of single-spaced text that is comprised of quotations from the pertinent discovery requests, a summary of Timewell's responses, and then Durbin's argument with respect to each Request. (DN 28-1, at PageID # 260-65.) Durbin's Motion to Compel does not comport with Local Civil Rule 5.1(b), which requires all motions filed with the Court to be double-spaced "except for appropriate block quotes, headings, and footnotes." Local Civil Rule 5.1(b). Durbin's failure to double-space his argument as to each Request violates Rule 5.1(b). Further, given this violation, it is likely that if revised to comport with Local Civil Rule 5.1(b), Durbin's Motion would exceed the page limitation prescribed by Local Civil Rule 7.1(d) ("Motions and responses may not exceed 25 pages without leave of Court."). While the Court did review the entirety of Durbin's Motion despite the violations, Durbin is cautioned to follow all Local Rules regarding formatting in future filings and seek leave of Court for additional pages where appropriate.

labor costs low to earn certain bonuses." *Id.* at 141-42. The court found that "the extensive financial information sought by [p]laintiff [wa]s not proportional to the needs of her case, particularly in light of her allegations about her personal work environment and managers, and that they pertain to one business location." *Id.* at 142.

*McArthur* is distinguishable and non-dispositive of the instant case. Unlike the plaintiff in *McArthur*, Durbin's wage and hour claims stem from a contract that determined what commissions Durbin would receive by reference to Timewell's "audited net ordinary income" yet failed to define the same. (DN 28-6.) Accordingly, Timewell's audited net ordinary income is at the heart of Durbin's claims and this litigation. Any documents that bear on establishing Timewell's audited net ordinary income are, therefore, relevant and discoverable under Fed. R. Civ. P. 26.

The Court likewise finds that Durbin's requests are proportional to the needs of this case. In assessing proportionality, the Court is directed by Fed. R. Civ. P. 26 to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). These factors weigh in favor of a finding that Durbin's requests are proportional. Timewell's audited net ordinary income is undefined in the 2014 contract and the amount of the same and its calculation are central to Durbin's claims. Though Timewell argued Durbin had not shown the numbers it provided were inaccurate, Timewell's financial documents appear to be solely in the possession of Timewell and it is unclear how Timewell expects Durbin to be able to make such a showing without access to the underlying documents on which Timewell's income calculation was based.[2] Additionally, Timewell has not demonstrated that the documents

_____

[2] The Court does not rely specifically on Durbin's allegations regarding the "preliminary" 2016 numbers referenced in both Durbin's Motion (DN 28-1, at PageID # 255) and Timewell's Response (DN 35, at PageID # 535-36). The

requested themselves are so numerous or that cost of producing the requested documents is so great as to outweigh their likely benefit in this matter.[3]  Instead, Timewell's objections seem to be primarily based on the "sensitive and confidential" nature of the data itself.  (DN 35, at PageID # 537.)  While the Court acknowledges Timewell's concerns, information is not automatically exempt from discovery because a party deems it to be sensitive or confidential.  There is no motion for protective order currently pending before the Court as to the requested financial documents, and the Parties' filings indicate that they have entered into a confidentiality agreement regarding documents produced in discovery.  (DN 40, at PageID # 653 n.2; DN 46-1, at PageID # 757.)  Therefore, the Court finds Timewell's concerns regarding confidentiality unavailing.

Further, the Court agrees with Durbin that Timewell's objections to Request for Production Nos. 3-7, 9, and 11 were too general and finds that Timewell's responses include impermissible "boilerplate" objections.  As this Court has discussed at length in prior opinions, boilerplate objections are forbidden by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 33(b)(3) (requiring objections to interrogatories to be made with specificity); Fed. R. Civ. P. 34(b)(2)(B) (requiring objections to requests for production to "state with specificity" the grounds for objecting to the request).  *See also Mitchell v Universal Music Group, Inc.*, No. 3:15-cv-174-JHM, 2018 WL 1573233, at *4-7 (W.D. Ky. Mar. 30, 2018), *rev'd in part on other grounds*, 2018 WL 2011934 (W.D. Ky. Apr. 30, 2018) (sustaining parties' objections in part regarding award of costs but affirming conclusion regarding waiver of objections); *Janko Enterprises, Inc. v. Long John*

_____

Court notes that there appears to be a significant dispute between the Parties regarding the document, how it was delivered to Durbin, Durbin's knowledge regarding the same, and Durbin's representations regarding the same to the Court in his initial Motion.  However, the existence of the dispute itself is further indication that allowing additional discovery into Timewell's financials is necessary here.

[3] While Timewell's response to Durbin's Motion stated that requiring Timewell "to spend hours producing this information that has nothing to do with [Durbin]'s claim is burdensome," Timewell provided no specificity about the burden allegedly imposed.  (DN 35, at PageID # 537.)  As the Court already found above that the requested documents are relevant to Durbin's claims, the Court finds Timewell's argument unpersuasive.

*Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported "boilerplate" objections clearly are improper.") Boilerplate is defined as "[r]eady-made or all purpose language that will fit in a variety of documents." *Boilerplate*, Black's Law Dictionary (11th ed. 2019). Timewell's objections to Request for Production Nos. 3-7, 9, and 11 satisfy this definition. Indeed, because the Parties attached Timewell's discovery responses in their entirety (DN 28-18), the Court can observe that Timewell asserted an *identical* objection regarding proportionality and undue burden to *twenty-six* of Durbin's total *thirty seven* discovery requests, including Request for Production Nos. 3-7, 9, and 11. (*Id.*) Likewise, Timewell asserted an *identical* objection regarding relevancy to *twenty-seven* of *thirty-seven* total discovery requests, including Request for Production Nos. 3-7, 9, and 11. (*Id.*) Asserting a general, identical objection to so many discovery requests violates Rule 33(b)(4) and Rule 34(b)(2)(B)'s requirement that objections be stated with specificity. Timewell's responses demonstrate that Timewell understands how to assert a specific objection to either proportionality, undue burden, or relevance as certain other objections regarding those topics include details to satisfy the specificity requirement. For example, Timewell's objection to Interrogatory No. 9 on grounds of undue burden and proportionality included a description of what action would be necessary on Timewell's part to provide the information in support of its objection, and Timewell's objection to Request for Production No. 14 on grounds of relevance included an argument that documents pertaining to sales in other territories was not pertinent to Durbin's claims. (*Id.* at PageID # 361-62, 381-82.) These objections are not boilerplate.

Additionally, the Court finds Timewell's repeated objections that terms within the text of the discovery requests were vague, ambiguous, imprecise, or "subject to multiple interpretations" to likewise be boilerplate despite each objection's reference to different terms within individual

requests. Timewell asserted *thirty-two* such objections to Durbin's *thirty-seven* discovery requests, again, including objections to Request for Production Nos. 3-7, 9, and 11. In examining the terms to which Timewell objected as vague, the Court finds some of the objections disingenuous. For example, Request No. 3 asked Timewell to "[p]roduce complete copies, *as filed*, of all your subsidiaries' *Federal income tax returns* for the years from 2014 through 2017." (DN 28-17, at PageID # 337.) Timewell objected that the phrase "as filed" was "vague, ambiguous, imprecise, or utilizes terms that are subject to multiple interpretations that are not properly defined or explained." (DN 28-18, at PageID # 369.) Timewell went on to state that "[w]ithout further clarification of these terms, it is unknown at this time whether documents responsive to this request are being withheld on the basis of this objection." (*Id.*) The Court disagrees that the term "as filed" is vague when used in a request for federal income tax returns or that Timewell could not determine whether responsive documents were being withheld. The Court observes that Timewell's "vagueness" objections appear to require greater specificity than is truly necessary for Timewell to provide responsive documents.

"When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited." *Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018). Given their boilerplate nature, the Court finds Timewell's objections based on relevance, vagueness, undue burden, and proportionality to be waived as to Request for Production Nos. 3-7, 9, and 11. Accordingly, Timewell's objections do not provide grounds for refusal to provide documents that the Court has found are otherwise within the scope of discovery. Durbin's Motion to Compel (DN 28) will be **GRANTED** as to Request for Production Nos. 3-7, 9, and 11.

### 2. Interrogatory No. 5

**INTERROGATORY NO. 5:** Please identify every employee that has been terminated <u>and</u> every employee and ex-employee that has filed a civil proceeding (including but not limited to agency and judicial complaints). For every civil proceeding identified please provide the case style, forum, and outcome.

(DN 28-17, at PageID # 333.) Timewell did not respond to this Interrogatory and instead asserted four objections as follows:

> **OBJECTION:** Defendant objects to this Interrogatory on the grounds that it seeks information that would be unduly burdensome to obtain and not proportional to the needs of the case.
>
> **OBJECTION:** Defendant objects to this Interrogatory to the extent it seeks the release of confidential or proprietary information, the release of which would be injurious to Defendant and/or third parties in the absence of an adequate confidentiality agreement or protective order.
>
> **OBJECTION:** Defendant objects to this Interrogatory on the grounds and to the extent the undefined phrases "every employee that has been terminated <u>and</u> every employee and ex-employee that has filed a civil proceeding" and "including but not limited to agency and judicial complaints" are vague, ambiguous, imprecise, or utilizes terms that are subject to multiple interpretations that are not properly defined or explained.
>
> **OBJECTION:** Defendant objects to this Interrogatory on the grounds that the interrogatory does not seek information that is relevant to claims or defenses asserted in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence.

(DN 28-18, at PageID # 358.) Durbin argued that Interrogatory No. 5 properly sought information related to the identification of possible comparators. (DN 28-1, at PageID # 268.) He argued that Timewell should not be permitted "to control the designation of comparators by simply refusing to provide requested comparator evidence except as to those persons it selects." (*Id.* (quoting *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 753 (6th Cir. 2012).) In response, Timewell argued that the Interrogatory improperly requested information as to every terminated employee as opposed to attempting to narrow the scope to individuals who were proper comparators. (DN 35, at PageID # 544.) Timewell stated that, as written, Interrogatory No. 5 would require it to produce information related to Title VII discrimination charges filed with the EEOC, unemployment

compensation records, workers' compensation claims, and other types of claims that are not specifically related to Durbin's claim that his commissions were wrongfully withheld and that Timewell retaliated against him for complaining. (*Id.* at 544-45.)

For the reasons set forth in Section II(A)(1) above, the Court finds Timewell's boilerplate objections as to undue burden, proportionality, and relevance to have been waived. The Court likewise finds that the terms Timewell deemed to be "vague" are intelligible within the context of the Interrogatory such that Timewell's vagueness objection is boilerplate and waived. As set forth above, the Parties' entry of a confidentiality agreement moots Timewell's remaining objection.

However, the lack of valid objection by Timewell does not obviate the Court's independent obligation under Fed. R. Civ. P. 26(b)(2)(C)(iii) to "limit the frequency or extent of discovery if it determines . . . that the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Despite Timewell's impermissible boilerplate objections, the Court agrees with Timewell's argument in its response that, as written, Interrogatory No. 5 is substantially overbroad. Given Durbin's claim for wrongful termination in violation of public policy and Timewell's defense regarding the reason for his termination, some evidence regarding other employees terminated under similar circumstances is relevant and discoverable in this action. Instead of targeting this relevant information, Interrogatory No. 5 asks for every employee ever terminated by Timewell with no limit as to duration. Therefore, Durbin's request as to Interrogatory No. 5 will be **GRANTED IN PART** and **DENIED IN PART** in that the Court will require Timewell to identify those individuals who made similar claims as Durbin in civil proceedings, who were terminated for similar reasons as Durbin, and who made similar complaints as Durbin prior to or subsequent to their termination. The Court will also limit Timewell's answer to only those employees terminated within the last five years.

### 3.     Interrogatory No. 15

**INTERROGATORY NO. 15:** Please identify every sales representative and/or manager who has been employed by you or your subsidiaries since the 2014 commission structure outlined in Exhibit 1 was instituted.  For each sales representative and/or manager identified please state whether they were employed under the 2014 commission structure, and if they were not employed under the 2014 commission structure please describe the commission structure(s) under which they were paid.

(DN 28-17, at PageID # 336.)  Timewell did not respond to this Interrogatory and instead asserted

three objections as follows:

> **OBJECTION:** Defendant objects to this Interrogatory to the extent it seeks the release of confidential or proprietary information, the release of which would be injurious to Defendant and/or third parties in the absence of an adequate confidentiality agreement or protective order.
> **OBJECTION:** Defendant objects to this Interrogatory on the grounds that it seeks information that would be unduly burdensome to obtain and not proportional to the needs of the case.
> **OBJECTION:** Defendant objects to this Interrogatory on the grounds that the interrogatory does not seek information that is relevant to claims or defenses asserted in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence.

(DN 28-18, at PageID # 367.)  Durbin again argued that Interrogatory No. 15 properly sought

information related to comparators.  (DN 28-1, at PageID # 269.)  Durbin represented that the 2014

commission structure was only imposed as to certain representatives and disputed that producing

the same was unduly burdensome given that there were only thirteen sales representatives in total

at the time of his termination.  (*Id.*)  In response, Timewell argued that the payment structure for

other employees is irrelevant to this litigation given that the "issue in this case is whether [Durbin]

was properly paid bonuses pursuant to *his* 2014 commission structure." (DN 35, at PageID # 545.)

As with Interrogatory No. 5 above, the Court deems Timewell's boilerplate objections based on

relevance, undue burden, and proportionality to have been waived.  Despite Timewell's boilerplate

objections, and pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii), the Court finds that Durbin requested

irrelevant information at least in part.  The names of any employees or managers who were also

subject to the same commission structure as Durbin are certainly relevant to assist Durbin in identifying comparable employees to defend against Timewell's stated reason for his termination. However, it is unclear why Durbin needs information regarding employees who were not subject to the same commission structure as him or regarding other commission structures used by Timewell. Accordingly, Durbin's Motion to Compel will be **GRANTED IN PART** and **DENIED IN PART** at to Interrogatory No. 15.

### 4. Request for Production No. 15

**REQUEST FOR PRODUCTION NO. 15:** Produce a complete copy of all sales representatives' and managers' "sales goals" versus "actual sales" for January 1, 2014 through June 30, 2018.

(DN 28-17, at PageID # 340.) In response, Timewell asserted four objections and responded as follows:

> **OBJECTION:** Defendant objects to this Request on the grounds and to the extent the undefined phrases "sales goals" and "actual sales" are vague, ambiguous, imprecise, or utilized terms that are subject to multiple interpretations that are not properly defined or explained. Without further clarification of these terms, it is unknown at this time whether documents responsive to this request are being withheld on the basis of this objection.
> **OBJECTION:** Defendant objects to this Request to the extent it seeks the release of confidential or proprietary information, the release of which would be injurious to Defendant and/or third parties in the absence of an adequate confidentiality agreement or protective order. Documents responsive to this request are being withheld at this time on the basis of this objection.
> **OBJECTION:** Defendant objects to this Request on the grounds that it seeks information that would be unduly burdensome to obtain and not proportional to the needs of the case. Documents responsive to this request are being withheld at this time on the basis of this objection.
> **OBJECTION:** Defendant objects to this Request on the grounds that the interrogatory [*sic*] does not seek information that is relevant to claims or defenses asserted in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence. Specifically and without limitation, documents comparing the actual sales goals of managers are irrelevant to the claims and defenses in this litigation, nor are they reasonably calculated to lead to the discovery of admissible evidence. Documents responsive to this request are being withheld at this time on the basis of this objection.

> **RESPONSE:** Subject to and without waiving the foregoing general and specific objections, and in order to facilitate discovery, Defendant states that documents for Timewell Drainage Products that are responsive to this request for sales representatives and not otherwise objectionable will be produced for inspection after the execution or entry of a Confidentiality Agreement or Protective Order of Confidentiality sufficient to protect Defendant's interest.

(DN 28-18, at PageID # 383.)  Durbin argued that even now that the confidentiality agreement is in place, Timewell still had not produced all responsive documents.  (DN 28-1, at PageID # 269.)  However, Durbin did not object to Timewell's proposed limitation regarding sales representatives versus managers.  In response, Timewell indicated that it had produced the responsive information and noted that Durbin had even used the same in response to his Motion to Compel.  (DN 35, at PageID # 544; DN 28-10.)  Durbin's reply did not address this issue.  In examining the document utilized by Durbin, the Court observes that it only appears to cover the sales goals and totals from September 2017 – August 2018.  (DN 28-10.)  Durbin also attached a document purporting to list sales goals and actual sales for January – December 2015.  (DN 28-22.)  Request No. 15 requested this information from January 1, 2014 – June 30, 2018.  As it is neither clear to the Court that Timewell produced the information for the additional time period nor has Timewell articulated any specific objection as to time period, Durbin's Motion will be **GRANTED IN PART** and **DENIED IN PART** as to Request No. 15 in that the Court will require Timewell to provide all sales representatives "sales goals" versus "actual sales" for January 1, 2014 through June 30, 2018 to the extent not already provided.

### 5.    Request for Production No. 20

> **REQUEST FOR PRODUCTION NO. 20:** Any and all employment records for all sales representatives and/or terminated employees of Timewell, ADI and/or C&L Tiling for the period from June 1, 2010 through June 30, 2018 including but not limited to the following: personnel files and records relating to performance and grievances, performance reviews, payroll records, employment contracts, written agreements, job description and all employee notices.  The scope of this request includes but is not limited to the following individuals' employment

records: Jim Molidor, Lou Anne Tillman, Brian Hayes, Jessica Robbins, Angela Richardson, Jayme Cargill, Jake Holtorf, Todd Buhmann, Jake Corzine, Penny Hendricks, and/or every individual identified in your response to Interrogatory No. 5.

(DN 28-17, at PageID # 342.)  Timewell asserted the following objections to the Request:

> **OBJECTION:** Defendant incorporates by reference herein its objections to Interrogatory No. 5 above. Documents responsive to this request are being withheld at this time on the basis of this objection.
> **OBJECTION:** Defendant objects to this request on the grounds and to the extent the undefined phrases "personnel file," "written agreements," "ADI," "Timewell," "records relating to performance and grievances," and "employee notices" are vague, ambiguous, imprecise, or utilize terms that are subject to multiple interpretations that are not properly defined or explained.  Without further clarification of this Request, it is unknown at this time whether documents responsive to this request are being withheld on the basis of this objection.
> **OBJECTION:** Defendant objects to this Request to the extent it seeks the release of confidential or proprietary information, the release of which would be injurious to Defendant and/or third parties in the absence of an adequate confidentiality agreement or protective order.  Documents responsive to this request are being withheld at this time on the basis of this objection.
> **OBJECTION:** Defendant objects to this Request on the grounds that it seeks information that would be unduly burdensome to obtain and not proportional to the needs of the case.  Documents responsive to this request are being withheld at this time on the basis of this objection.
> **OBJECTION:** Defendant objects to this Request on the grounds that the interrogatory [*sic*] does not seek information that is relevant to claims or defenses asserted in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence.  Documents responsive to this request are being withheld at this time on the basis of this objection.

(DN 28-18, at PageID # 390-91.)  On its face the Request applies to all Timewell sales representatives and terminated employees within the relevant period.  (DN 28-1, at PageID # 271.) However, Durbin only argued that Timewell should be required to produce the requested information for the possible comparators and requested the Court's assistance in identifying those individuals.  (*Id.* at 266.)  In his initial Motion, he identified fifteen comparators with respect to whom he asked the Court to compel Timewell to provide information.  (*Id.* at 270-71.) However, in his Reply, he agreed to limit the list of comparators to only the seven individuals who he claimed

had "actual sales or sales goal percentages" similar to or worse than his between September 2017 and March 2018. (DN 40, at PageID # 658; DN 28-1, at PageID # 270-71.) He argued that Timewell should not be permitted to control the process of identifying comparators. (DN 28-1, at PageID # 266-68.) Timewell asserted that none of the individuals identified by Durbin are proper comparators. (DN 35, at PageID # 546.)

While both Timewell and Durbin cited cases regarding who is a proper comparator and seem to request a ruling from the Court that certain individuals are or are not comparators, the only motion before the Court is a motion to compel regarding discovery, not a motion for summary judgment. Therefore, the only question currently before the Court is whether information about particular comparators is relevant and discoverable within the scope of Rule 26. The Court recognizes that the two issues overlap to a certain extent because from Timewell's perspective, if a particular employee is not a proper comparator, his or her information is likely outside the scope of discovery. However, the Court will not conclusively rule at this time as to whether an individual is a comparator or not. Instead, the Court will assess whether Durbin has provided sufficient information to conclude that an individual could be a proper comparator such that his or her information is relevant to Durbin's claims and/or Timewell's defenses and otherwise discoverable within the scope of Fed. R. Civ. P. 26(b)(1).

Though Timewell and Durbin disagree to a certain extent about the standard that the Court should use to determine who is a comparator, they agree in broad strokes that a comparator is a "similarly situated" employee. (DN 35, at PageID # 538; DN 40, at PageID # 658.) Timewell represented in its answer to Interrogatory No. 8 that Durbin was terminated as a result of a "substantial reduction in his job performance when comparing his sales volume to his expectations and goals," "failure to comply with policies, procedures, and directives outlined for the sales

team;" "consistent failure to meet deadlines;" and "direct disregard and insubordination in connection with instructions given from management." (DN 28-18, at PageID # 361; DN 35, at PageID # 540.) At the very least then, in order to be "similarly situated," an individual must share some or all of those same criticisms but not have been terminated. While certain of those items are not easily quantifiable or not fully described based on the record presently before the Court, the discrepancy in sales goals and actual sales can be easily assessed by the Court on the basis of the documentation provided by the Parties (DN 28-10).

Durbin argued that M. Loschieder, K. Dunn, M.A. Young, B. Hedden, J. Franson, and B. Rabey are proper comparators based on their similar sales/sales goal percentages to Durbin. (DN 40, at PageID # 658.) Timewell argued in response that the relevant "metric" is the ratio of actual sales to sales goals set for a particular individual and that when that ratio is assessed, none of the individuals identified by Durbin are similarly situated to him. (DN 35, at PageID # 540.) Durbin attached to his motion a chart of the sales goals and actual sales for the above individuals and others between September 2017 and August 2018. (DNs 28-10, 35-5.) However, the actual sales numbers are blank in the documents provided for April 2018 through September 2018. (*Id.*) While Durbin independently produced his sales total from April 2018 (DN 40-3), the Court does not appear to have access to that information for the remaining individuals identified by Durbin. Accordingly, the Court will assess whether Durbin has demonstrated he was potentially similarly situated based on the data provided for the period between September 2017 and March 2018. This data is sufficient given Durbin was terminated in early May 2018. Based on the Court's review of the documents provided by the Parties (DNs 28-10, 35-5), the relevant figures for the comparators proposed by Durbin and Durbin, himself, are:

| Representative | Sales Goal | Total Sales | Percentage of Goal[4] |
|---|---|---|---|
| K. Durbin | $2,375,000 | $1,275,712 | 54% |
| B. Rabey | $1,630,000 | $1,139,092 | 70% |
| J. Franson | $920,000 | $703,461 | 76% |
| M.A. Young | $137,500 | $108,020 | 79% |
| K. Dunn | $1,460,000 | $1,251,813 | 86% |
| M. Loschieder | $2,205,000 | $2,229,240 | 101% |
| B. Hedden | $220,000 | $302,294 | 137% |

Though Timewell is correct that Durbin had the lowest percentage of goal to total sales, the Court finds that B. Rabey, J. Franson, and M.A. Young were sufficiently similar to Durbin such that discovery as to those individuals is relevant to Durbin's claims and Timewell's defenses and otherwise discoverable within the meaning of Rule 26(b)(1).[5]

As with the other discovery requests above, though the vast majority of Timewell's objections were boilerplate ones that the Court will deem waived, pursuant to Rule 26(b)(2)(C)(iii), the Court likewise concludes that Request No. 20 is overbroad.  For example, it is unclear what information these employees' payroll records are likely to provide that would be relevant to Durbin's claims and Timewell's defenses.  Accordingly, the Durbin's Motion will be **GRANTED IN PART** and **DENIED IN PART** as to Request for Production No. 20 insofar as the Court will require Timewell to provide copies of the personnel files, performance reviews, and any records relating to performance and grievances for B. Rabey, J. Franson, and M.A. Young.

### 6.     Request for Production No. 18(c)-(e)

**REQUEST FOR PRODUCTION NO. 18:** Please search the e-mail databases, whether active databases or stored or archived databases, that you or your

---

[4] In its response, Timewell cited to sales goal percentages that referenced not only the sales goals for September 2017 – March 2018 but also included sales goals through August 2018 as part of the total calculation.  (DN 35, at PageID # 540.)  Given the documents provided include no actual sales figures for the pertinent individuals in the months of April – August 2018, the Court finds use of the totals referred to by Timewell inappropriate.

[5] The Court has reviewed and understands Timewell's arguments regarding these three individuals but concludes that the import of these individuals perhaps having had different supervisors and working in separate territories is more properly assessed at the summary judgment stage.

subsidiaries have utilized for company e-mails since June 1, 2010 and produce search results based on the following requests for information:

    (c)    Any and all e-mails which reference an employee termination, commission dispute, Defendant's "net operating income", financial bonus, commission, calculations, declining product quality, AASHTO & ASTM standards, audit & investigations, any and all sales representatives' performance/performance review, and Defendant's or its subsidiaries accounting practices, policies and procedures.

    (d)    Any and all e-mails which reference termination, litigation or settlement involving the following individuals: Jim Molidor, Lou Anne Tillman, Brian Hayes, Jessica Robbins, Angela Richardson, Jayme Cargill, Jake Holtorf, Todd Buhmann, Jake Corzine, Penny Hendricks, and/or every individual identified in your response to Interrogatory No. 5.

    (e)    The scope of this request includes but is not limited to responsive e-mails to the above parts a-d that were sent, received by, received from, or sent to the following individuals . . . .[6]

(DN 28-17, at PageID # 340-42.) Timewell again asserted multiple boilerplate objections. (DN 28-18, at PageID # 387-88.) Despite including this Request in his motion, Durbin argued that the Parties could independently work to narrow the scope of the e-mail production requested once the Court assisted in identifying comparators. (DN 28-1, at PageID # 266, 270-71.) The Court already ruled above in Section II(A)(5) that Durbin has only demonstrated that discovery regarding B. Rabey, J. Franson, and M.A. Young was relevant and otherwise discoverable under Fed. R. Civ. P. 26(b)(1). However, none of those individuals are explicitly referenced in Request for Production No 18. Further, Timewell argued in its response that Request No. 18(c)-(e) was overly burdensome and disproportionate to the needs of the case. (DN 35, at PageID # 546-47.) Timewell represented that to respond to Request No. 18 with respect to all individuals requested by Durbin would "require [Timewell] to spend thousands of more hours and make a significant financial investment reviewing e-mails while the commissions [Durbin] is seeking only totals $76,720.43." (*Id.* at 547.) Timewell represented that to respond to similar requests for e-mails featuring Durbin

---

[6] Subparagraph (e) then went on to list over forty specific individuals. (DN 28-17, at PageID # 341-42.)

took eighty five hours of review and cost approximately $5,200. (*Id.* at 542.) Accordingly, Timewell estimated the review for all fifteen comparators originally identified by Durbin would take approximately 1,275 hours and cost approximately $78,000.[7] (*Id.*) While narrowing the scope to only those individuals identified by the Court would significantly lessen the cost, it would not remove the cost entirely. Given this potential burden, Durbin's representation regarding the Parties' ability to negotiate potential search terms, and that the Court already permitted Durbin to obtain the personnel files and certain other records regarding B. Rabey, J. Franson, and M.A. Young that Durbin could use in support of his claims, Durbin's Motion is **DENIED** as to Request No. 18(c)-(e).

### 7.     Request for Production No. 24

> **REQUEST FOR PRODUCTION NO. 24:** Produce for inspection in original native electronic format, the electronic documents on which the 2014-2017 goals were originally determined and/or stored (i.e. Microsoft Word, Excel, etc.).

(DN 64-1, at PageID # 1377; DN 58-9, at PageID # 1273-74.) Timewell objected that the Request did not seek information relevant to the claims or defenses in the action but then stated that "it [wa]s still in the process of compiling documents responsive to th[e] Request, which will be produced for inspection upon the completion of that collection." (*Id.*) Despite this response, Durbin asserted that Timewell never produced any such document and moves the Court to require Timewell to do so. (DN 64-1, at PageID # 1377.) Subsequently, during a June 17, 2019 telephonic status conference with the Court, Timewell informed Durbin that it was unable to locate the records requested for 2016 and 2017 but produced the records it was able to find for 2014 and 2015. (DN 77, at PageID # 1526.) Timewell now asserts that the only way for it to recover the 2016 and 2017

---

[7] Neither Timewell's Response nor the affidavit provided in support of its cost assessment clearly identify the source of the cost with regard to whether it represents the value of the time spent reviewing the materials or whether it reflected some other technological cost of retrieving and reproducing the information. (DNs 35, 35-6.)

records would be to access electronically-stored archives maintained by a third-party vendor that are not readily available. (*Id.* at 1525.) Timewell represented that it would cost approximately $8,000 to $10,000 merely to retrieve the appropriate archive and then additional costs to search for the responsive documents. (*Id.*) Timewell now argues that such a cost represents an undue burden it should not have to incur in this action and of which it was not aware at the time it initially responded to the Request. (*Id.*) Durbin requested the Court compel Timewell to produce the discovery it already agreed to produce. (DN 64-1, at PageID # 1377.)

Though cited by neither party, Fed. R. Civ. P. 26(b)(2)(B) regarding discovery of electronically stored information provides,

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B). Here, the Court finds that Timewell has demonstrated the requested documents from 2016 and 2017 are not reasonably accessible because of undue burden or cost given their representations regarding the cost and their attempts to search for these documents via other avenues.[8] Therefore, the burden shifts to Durbin to show good cause for the discovery. Durbin argued that it needed the data in native format so that an expert could "examine the metadata and determine whether any red flags exist for manipulation of the metadata and/or when certain changes were made." (DN 64-1, at PageID # 1378.) Durbin stated that he has evidence these goals or results were changed and cited in support to his own deposition testimony and e-

---

[8] The Court acknowledges Durbin's point that Timewell did not produce an invoice or affidavit to support their cost assessment, but the Court is satisfied with Defendant's counsel's representation regarding cost pursuant to Rule 11 both in Timewell's Response (DN 77) and during the June 17, 2019 telephonic status conference.

mails he sent to management while still employed at Timewell requesting updated information on unpaid commissions. (DN 64-1, at PageID # 1378.) The Court finds that Durbin has not shown good cause given his own testimony is evidence he may cite to in support of his claims and given that he did not even address the correct standard for discovery of electronically stored information in his Motion. Accordingly, Durbin's Second Motion to Compel (DN 64) will be **DENIED** as to Request for Production No. 24.

### 8. Request for Production No. 25

> **REQUEST FOR PRODUCTION NO. 25:** Produce all emails sent or received by Steve Johnson and/or Tyler Edge from May 1, 2016 through January 31, 2017 that contain the following keywords in either the subject line or content: "Net Ordinary Income", "NOI", "Net Income", "Audit", "Audits", or "Audited".

(DN 64-1, at PageID # 1377.) Again, Durbin argued that Timewell agreed to produce these documents and failed to do so. (*Id.*) During the June 17, 2019 Status Conference, Timewell's counsel acknowledged that this Request was different from Request No. 24 addressed above and that the e-mails requested could be obtained without undue burden. (*Id.* at 1377-78.) Timewell only argued that it had not done so because of its then-pending Motion to Stay Discovery (DN 56). As the Court subsequently denied Timewell's Motion to Stay (DN 82), it appears Timewell has no remaining objection to producing the documents. Accordingly, Durbin's Second Motion to Compel (DN 64) will be **GRANTED** as to Request for Production No. 25.

### 9. Request for Fees

In his initial Motion to Compel Durbin requested his reasonable costs and attorney's fees associated with bringing the motion. (DN 28-1, at PageID # 272.) However, in his reply, Durbin withdrew and reserved his request for the same. (DN 40, at PageID # 663.) Therefore, Durbin's request for costs and attorney's fees as to his initial motion (DN 28) will be **DENIED AS MOOT**.

Durbin also requested costs and attorney's fees in his Second Motion to Compel. (DN 64-1 ,at PageID # 1381.) Under Fed. R. Civ. P. 37(a)(5)(A), if a court grants a motion to compel,

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii)   other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). If a motion to compel is granted in part and denied in part, then it is within the court's discretion to apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

Here, the Court granted Durbin's second Motion to Compel (DN 64) in part as to Request for Production No. 25. However, the Court finds that Timewell's nondisclosure was substantially justified given the dispositive motions (DNs 54, 55) and Motion to Stay that were pending prior to Durbin's filing of his second motion to compel. Even though the Court eventually denied the Motion to Stay, the Court did not do so until after the instant motion was fully briefed. Accordingly, Durbin's request for costs and attorney's fees regarding his Second Motion to Compel (DN 64) is **DENIED**.

### B.     Durbin and M. Durbin's Motion for Protective Order (DN 30)

Durbin and his wife, non-party M. Durbin, have moved for a protective order prohibiting Timewell from seeking discovery for M. Durbin's former employers and requesting that the Court quash two subpoenas noticed for M. Durbin's current and former employers. (DN 30.) In support, the Durbins stated that though Durbin had no plans to leave Kentucky, after he was terminated from Timewell, M. Durbin got a job as a teacher at a school in Arizona and the family moved to

Phoenix.  (DN 30-1, at PageID # 448-49.)  M. Durbin indicated she was concerned the subpoena would interfere with her current employment and cited the embarrassment and annoyance that would result from serving a subpoena on her current and previous employers.  (*Id.* at 449.)  M. Durbin provided an affidavit representing that her new employer is a "prestigious private school in Arizona" with a "zero-tolerance policy for drama."  (DN 41-2, at PageID # 701.)  She represented that she is on a probationary period for her first year and fears what receipt of a subpoena would do to her continued employment.  (*Id.* at 701-02.)  The Durbins also argued that M. Durbin's employment records are irrelevant to this action.  (*Id.* at 452.)

In response, Timewell argued that because Durbin has stated in his filings and discovery responses that his wife got a job in Phoenix and that is why the family moved there, M. Durbin's employment records are relevant to both liability and damages.  (DN 39, at PageID # 635.)  Timewell argued that if the Durbins planned to move to Phoenix before Durbin was terminated, it would potentially eliminate back and front pay damages.  (*Id.*)

The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  Here, the Court finds good cause to issue a protective order.  Durbin's claims are for wage and hour violations, breach of contract, unjust enrichment, fraud by misrepresentation, and wrongful termination in violation of public policy.  (DN 11.)  The Court does not see how information regarding M. Durbin's employment is relevant to any of those claims or any of Timewell's defenses, and Timewell presented the Court with no authority demonstrating how a decision to move to Arizona or searching for jobs in Arizona would affect Durbin's damages.  Further, the Court agrees with both Durbin and M. Durbin that the information sought by Timewell could be easily obtained from

both Durbin and M. Durbin, especially given the potential annoyance and embarrassment to M. Durbin.

Accordingly, Durbin and M. Durbin's Motion for Protective Order (DN 30) is **GRANTED**. Discovery related to non-party M. Durbin's employment shall be limited to discovery directed to Plaintiff and/or M. Durbin until further order of this Court. The subpoenas previously issued to M. Durbin's former and current employers, JCPS and the Summit School are **QUASHED**.

### C.    Motions to Seal (DNs 46, 72)

It is well-established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g.*, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176-79 (6th Cir. 1983). The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "only the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). To meet this burden, the party seeking a seal must show (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly-tailored. *Id.*; *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593-94 (6th Cir. 2016). The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter Int'l., Inc. v. Abbott Lab.*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a Motion to Seal, the Court is required to make "specific findings and legal conclusions 'which justify nondisclosure to the public.'" *Rudd*, 834 F.3d at 594 (quoting *Brown & Williamson*, 710 F.2d at 1176). "'[A] court's failure to set forth

those reasons . . .' is itself sufficient grounds to vacate the seal." *Id.* (quoting *Shane Grp.*, 825 F.3d at 306).

The Parties jointly sought leave to file under seal (1) Timewell's financial statements and budgets from 2014-2017, (2) e-mail communications discussing Timewell's financial information, and (3) audit reports conducted by Timewell's outside auditor for 2017-2017. (DN 46.) Timewell also separately sought leave to file its budget information for 2015 under seal. (DN 72.) Durbin did not file a response or objection to Timewell's separate request for leave to file under seal. Generally, the Parties argued that these four categories of documents contain sensitive and confidential financial information that would cause Timewell serious injury if disclosed to the public. (DN 64, at PageID # 759; DN 72, at PageID # 1441 (incorporating arguments from Joint Motion to Seal (DN 64)).) In support of their request, the Parties attached the affidavit of Darren Wagner, Timewell's Chief Executive Officer. (DN 46-2.) Wagner asserted that Timewell is part of a small and highly competitive industry and is in competition with other companies to gain control of the mid-west market. (*Id.* at PageID # 765.) Wagner represented that in order to compete, Timewell "has established strategies and pricing lists that are unique to the market it serves," which it treats as highly-confidential, and that Timewell keeps its financial and sales information and third-party audit reports confidential. (*Id.*) Wagner stated that Timewell "derives an independent economic value by maintaining the confidentiality of" all these categories of documents such that disclosure of them to Timewell's competitors would put Timewell at a competitive disadvantage. (*Id.* at 766-67.)

Timewell's financial statements and budgets from 2014 through 2017, including the separately filed budget for 2015, (DNs 47-1, 73-1) do contain sensitive financial information including Timewell's net income, net margin, gross profit, revenue, total income, and operating

expenses. The e-mails discussing Timewell's financial information (DN 47-2) likewise contain details regarding pricing, financial projections, and sales strategy. The external audit reports (DN 47-3) contain information regarding Timewell's earnings, cash flow, income, expenses, goodwill, inventory, etc. Based on the Wagner affidavit and the Court's review of these documents, the Court finds that the Parties have demonstrated that Timewell's interest in keeping its financial information from being disclosed to the public and especially to its competitors outweighs the public's right of access at this time given the harm to Timewell should such materials be subject to disclosure. Accordingly, the Parties' Joint Motion to Seal (DN 46) and Timewell's Motion to Seal (DN 72) are **GRANTED**.

## III.   ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)     Durbin's Motion to Compel Discovery Responses (DN 28) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   (a)     Durbin's Motion is **DENIED AS MOOT** as to Interrogatory No. 6.

   (b)     Durbin's Motion is **GRANTED** as to Request for Production Nos. 3-7, 9, and 11. Timewell shall provide complete responses to Request Nos. 3-7, 9, and 11.

   (c)     Durbin's Motion is **GRANTED IN PART** and **DENIED IN PART** as to Interrogatory No. 5. Timewell shall respond to Interrogatory No. 5 and identify those individuals who made similar claims as Durbin in civil proceedings, who were terminated for similar reasons as Durbin, and who made similar complaints as Durbin prior to or subsequent to their

termination. Timewell need only identify such individuals terminated within the past five years.

(d)    Durbin's Motion is **GRANTED IN PART** and **DENIED IN PART** as to Interrogatory No. 15. Timewell shall respond to Interrogatory No. 15 and identify the names of any employees or managers who were subject to the same commission structure as Durbin.

(e)    Durbin's Motion is **GRANTED IN PART** and **DENIED IN PART** as to Request for Production No. 15. Timewell shall provide Durbin with all sales representatives "sales goals" versus "actual sales" for January 1, 2014 through June 30, 2018 to the extent not already provided.

(f)    Durbin's Motion is **GRANTED IN PART** and **DENIED IN PART** as to Request for Production No. 20. Timewell shall produce copies of the personnel files, performance reviews, and any records relating to performance and grievances for B. Rabey, J. Franson, and M.A. Young.

(g)    Durbin's Motion is **DENIED** as to Request No. 18(c)-(e).

(h)    Durbin's request for costs and attorney's fees associated with his Motion (DN 28) is **DENIED AS MOOT**.

(2)    Durbin's Second Motion to Compel (DN 64) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(a)    Durbin's Motion is **DENIED** as to Request for Production No. 24.

(b)    Durbin's Motion is **GRANTED** as to Request for Production No. 25.

(c)    Durbin's request for costs and attorney's fees associated with his Motion (DN 64) is **DENIED**.

(3)     Durbin and Non-Party Mary Jacqueline Durbin's Motion for Protective Order (DN 30) is **GRANTED**.

> (a)     Discovery related to non-party Mary Jacqueline Durbin's employment shall be limited to discovery directed to Plaintiff Durbin and/or Mary Jacqueline Durbin until further order of this Court.
>
> (b)     The subpoena's previously issued by Timewell to Mary Jacqueline Durbin's former and current employers, JCPS and the Summit School, are **QUASHED**.

(4)     The Parties' Joint Motion to File Documents Under Seal (DN 46) is **GRANTED**. DNs 47-1, 47-2, 47-3 shall **REMAIN UNDER SEAL**.

(5)     Timewell's Motion to File Documents Under Seal (DN 72) is **GRANTED**.  DN 73-1 shall **REMAIN UNDER SEAL**.

(6)     Given the upcoming October 3, 2019 settlement conference, Timewell shall provide supplemental discovery responses as ordered herein no sooner than **October 18, 2019** and no later than **October 31, 2019** so as to allow the Parties to focus on preparing for the settlement conference.

cc:  Counsel of record